**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **JESSICA KLATTE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 1:26-cv-1331** |
| | ) | |
| **CONNECTIONS CASE MANAGEMENT, LLC,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

## I. Nature of the Case

1. This is an action brought pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.,* and the Americans With Disabilities Act, ("ADA"), 42 U.S.C. §12101 *et seq*., as amended. The Plaintiff, Jessica Klatte ("Klatte"), alleges that the Defendant, Connections Case Management, LLC ("Connections"), unlawfully discriminated against her because of her association with her severely disabled son. Klatte further alleges that Connections interferred with her attempt to exercise her rights protected by the FMLA.

## II. Parties

2. Klatte is a United States citizen, and at all times relevant to this action, has resided in Hendricks County, within the Southern District of Indiana.

3. Connections is a domestic Limited Liability Company, and at all times relevant to this action, has conducted business and/or maintained offices in Marion County, within the Southern District of Indiana.

## III. Jurisdiction and Venue

4. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 2617(a)(2), and 42 U.S.C. §12117.

5. At all times relevant to this action, Klatte was an "eligible employee" as that term is defined by 29 U.S.C. § 2611(2), and an "employee" as defined by the ADA, 42 U.S.C. § 12111(4).

6. At all relevant times, Klatte has been a qualified individual as that term is defined in 42 U.S.C. § 12111..

7. At all relevant times, Connections has been an “employer” as that term is defined by 29 U.S.C. § 2611(4), and by 42 U.S.C. § 12111(5)(A).

8. Plaintiff satisfied the obligation to exhaust her administrative remedies by having timely filed an EEOC charge alleging disability discrimination, receiving the appropriate Notice of Right to Sue, and timely filing this action less than ninety days following his receipt of said notice.

9. All of the events, transactions, and occurrences pertinent to this lawsuit have occurred within the geographical environs of the Southern District of Indiana and all parties are located therein. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## IV. Factual Allegations

10. Klatte began her employment with Connections in December 2023, as a Case Manager. Throughout her employment, Klatte met or exceeded Connections' legitimate job performance expectations. Like all of Connections' employees, Klatte works from home.

11. On May 17, 2024, Klatte's two-year-old son, M.K., was hospitalized. Ultimately, M.K. was diagnosed with global developmental delay and dysphagia, and in April 2025, was diagnosed with epilepsy.

12. As a result of his disabilities, M.K. can neither eat nor drink normally, and must be

tube fed. M.K. is also prone to suffer grand mal seizures.

13. These problems required Klatte to take time off from work four or five times a week, but because of her flexible schedule, Klatte was always able to complete her work in a timely fashion.

14. During the spring and summer of 2024, Connections initially reduced Klatte's caseload to 40 cases, but later assigned her new cases, including two highly complex cases being monitored by the Indiana Bureau of Developmental Disabilities.

15. Also during that time, Klatte's supervisor, Morgan Tucker ("Tucker") made what Klatte reasonably considered to be a concerning and dismissive remark about M.K.'s medical problems, "Oh, that's it? I thought he was hit by a car or something."

16. Throughout the summer of 2024, Klatte's supervisors continued to criticize her for alleged "timeliness" in responding to emails.

17. In response, Klatte pointed out what she perceived as a double standard, noting that both her immediate supervisor and Connections' Chief Operating Officer, Becky Johnson, frequently failed to respond to urgent emails from Klatte. Klatte also pointed out that her caseload no longer reflected the reduction agreed upon earlier that summer.

18. In February 2025, Klatte was issued a written warning when three of her families allegedly requested a new case manager.

19. The families alleged that Klatte had missed meetings, failed to reschedule missed meetings, was unresponsive to the families, and failed to follow through on points from the meetings. Klatte, however, disputed the allegations, providing detailed information in rebuttal.

20. Despite the alleged concerns, Klatte received extremely positive feedback from her immediate supervisor, who in May 2025, noted that "Jessica Klatte is doing amazing work and I

wanted everyone to know[.]"

21. The following month, Regional Case Manager Anita Williams ("Williams") noted wrote that, Klatte was "an absolute rockstar[,]" whose "efforts have made all the difference[.]"

22. In April 2025, Klatte was told that her territory was to be changed from Morgan County to Boone County. Additionally, Klatte was assigned new cases during the time, resulting in increased responsibility.

23. This change was made very shortly after Klatte requested FMLA leave, a request occasioned by M.K.'s epilepsy and global developmental dysphagia diagnoses, which required Klatte to take M.K. to Riley Children's Hospital for treatment twice a week.

24. Connections refused Klatte's request for FMLA leave, claiming it was not required to provide FMLA since it did not have 50 employees within a 75-mile radius of Klatte's work location.

25. Two weeks after Klatte's request for FMLA leave was turned down, she requested additional paid time off ("PTO") to take M.K. to a "sedated MRI procedure."

26. Connections' management initially ignored Klatte's request, although eventually, the HR department did allow the PTO.

27. On June 5, 2025, Klatte's older son, D.K. was seriously burned in an accident and was taken to the emergency room.

28. When Klatte was notified, she immediately notified both HR and her Regional Director, that she was at the hospital and would provide updates as soon as possible.

29. Klatte was asked to submit an internal form she had been working on the day before, needed to complete the transfer of a case to a new case manager. Klatte submitted the form at 9:07 that night.

30. On June 12, 2025, Klatte was summoned to a virtual meeting titled "HR Follow-up Call." Klatte entered the meeting expecting to discuss updates on her children's medical situations. Instead, Klatte was terminated.

## V. <u>Causes of Action</u>

### Count 1: FMLA Interference

31. Plaintiff incorporates the allegations in each of the preceding paragraphs as though fully set forth herein.

32. Defendant interfered with Plaintiff's substantive rights provided by the FMLA when it first incorrectly informed the Plaintiff that she was not entitled to FMLA leave, and then terminated Plaintiff's employment after Plaintiff requested FMLA.

33. Defendant's actions were intentional, willful, and done in reckless disregard of Plaintiff's legal rights and, therefore, Defendant acted in bad faith.

34. As a direct and proximate result of Defendant's unlawful, bad faith actions, Plaintiff suffered, and continues to suffer, damages, including but not limited to loss of employment, wages and benefits, damage to Plaintiff's personal and professional reputation, and emotional distress.

### Count 2: FMLA Discrimination/Retaliation

35. Plaintiff incorporates the allegations in each of the preceding paragraphs as though fully set forth herein.

36. Defendant discriminated against Plaintiff in violation of the FMLA when it first incorrectly informed the Plaintiff that she was not entitled to FMLA leave, and then terminated Plaintiff's employment after Plaintiff requested FMLA.

37. Defendant retaliated against Plaintiff in violation of the FMLA after Plaintiff when it first incorrectly informed the Plaintiff that she was not entitled to FMLA leave, and then

terminated Plaintiff's employment after Plaintiff requested FMLA.

38. Defendant's actions were intentional, willful, and done in reckless disregard of Plaintiff's legal rights and, therefore, Defendant acted in bad faith.

39. As a direct and proximate result of Defendant's unlawful, bad faith actions, Plaintiff suffered, and continues to suffer, damages, including but not limited to loss of employment, wages and benefits, damage to Plaintiff's personal and professional reputation, and emotional distress.

**Count 3: Disability Discrimination (Associational)**

40. The Plaintiff incorporates the factual allegations in each of the preceding paragraphs as though fully set forth herein.

41. M.K. has a "disability" as that term is defined by the ADA, 42 U.S.C. § 12102.

42. Defendant discriminated against the Plaintiff because of the Plaintiff's association with M.K., by subjecting denying the Plaintiff FMLA leave to care for M.K., and by terminating Plaintiff's employment when Plaintiff requested FMLA leave to care for M.K.

43. Defendant's actions also subjected the Plaintiff to a hostile work environment based on the Plaintiff's disability, in further violation of the ADA.

44. Defendant's unlawful and discriminatory actions were intentional, willful, and/or taken with reckless disregard for the Plaintiff's clearly established rights under the ADA.

45. As a direct and proximate result of Defendant's unlawful and discriminatory actions, the Plaintiff suffered, and continues to suffer, damages, including but not limited to loss of employment, wages and benefits; emotional distress, embarrassment, humiliation, and damage to Plaintiff's personal and professional reputation.

**Count 4: Hostile Work Environment (Disability/Associational)**

46. The Plaintiff incorporates the factual allegations in each of the preceding paragraphs

as though fully set forth herein.

47. M.K. has a "disability" as that term is defined by the ADA, 42 U.S.C. § 12102.

48. Defendant denied the Plaintiff FMLA leave to care for M.K., and terminated Plaintiff's employment when Plaintiff requested FMLA leave to care for M.K.

49. Defendant's unwanted conduct was so severe or pervasive that a reasonable person would find Plaintiff's work environment intimidating, hostile, and/or abusive.

50. Defendant's unlawful and discriminatory actions were intentional, willful, and/or taken with reckless disregard for the Plaintiff's clearly established rights under the ADA.

51. As a direct and proximate result of Defendant's unlawful and discriminatory actions, the Plaintiff suffered, and continues to suffer, damages, including but not limited to loss of employment, wages and benefits; emotional distress, embarrassment, humiliation, and damage to Plaintiff's personal and professional reputation.

## VI. Request for Relief

WHEREFORE, Plaintiff , by counsel, respectfully requests that this Court find for Plaintiff and:

52. Order Defendant to reinstate Plaintiff, or to award Plaintiff front pay in lieu thereof;

53. Order Defendant to pay Plaintiff all lost wages, benefits, compensation, and monetary loss suffered as a result of Defendant's unlawful actions;

54. Order Defendant to pay Plaintiff liquidated damages for its violation of the FMLA;

55. Order the Defendant to pay Plaintiff compensatory damages in an amount sufficient to make the Plaintiff whole from the results of Defendant's wrongful conduct;

56. Order Defendant to pay Plaintiff's reasonable attorney fees, litigation expenses, and costs incurred as a result of bringing this action;

57. Order Defendant to pay Plaintiff pre- and post-judgment interest on all sums recoverable; and

58. Order Defendant to provide Plaintiff with all other legal and/or equitable relief to which Plaintiff is entitled.

**DEMAND FOR JURY TRIAL**

Plaintiff Jessica Klatte, by counsel, respectfully requests a jury trial for all issues deemed so triable.

Respectfully submitted,

*s/ Jay Meisenhelder*

Jay Meisenhelder, Atty No. 19996-49
JAY MEISENHELDER EMPLOYMENT
& CIVIL RIGHTS LEGAL SERVICES, P.C.
650 North Girls School Road, Suite D40
Indianapolis, IN 46214
Office Telephone: 317/231-5193
Direct Telephone: 317/899-9220
Facsimile Number: 317/982-5463
Email Address: jaym@ecrls.com